IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **LAWRENCE PICKAREE** | § § § | |
| *Plaintiff* | § § | **CIVIL ACTION NO.** |
| v. | § § | |
| **HAFENSTAUEREI KPT. WILHELM SCHULTZE GMBH & CO. KG and GRACE OCEAN PTD LTD** | § § § § § | _____ |
| *Defendants* | § § | **JURY REQUESTED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Lawrence Pickaree ("Plaintiff") and files this Original Complaint against Hafenstauerei Kpt. Wilhelm Schultze GmbH & Co. KG ("Schultze") and Grace Ocean PTD LTD ("Grace") (collectively referred to as the "Defendants") and in support respectfully shows the Court as follows:

### PARTIES

1. Lawrence Pickaree is an adult residing in Harris County, Texas and is an experienced Longshoreman.

2. Hafenstauerei Kpt. Wilhelm Schultze GmbH & Co. KG GD is a German stevedoring corporation headquartered in Bremen, Germany, located at Getreidestraße 14, 28217 Bremen.

3. Grace Ocean PTD LTD is a Singaporean maritime corporation headquartered in Singapore, located at People's Park Centre #10-24, 101A Upper Cross Street (S)058358, Singapore 058357.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this lawsuit under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), specifically 33 U.S.C. § 905(b) as Plaintiff asserts claims of negligence against a shipowner and a nonemployer. This is an admiralty and maritime claim within the jurisdiction of the United States and this Honorable Court pursuant to 28 U.S.C. § 1333 and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

5. Venue is proper in this district as per 28 U.S.C. § 1391(b)(2) as the Southern District of Texas is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

## CONDITIONS PRECEDENT

6. All conditions precedent have been performed or occurred.

## RESPONDEAT SUPERIOR

7. Defendants are legally responsible to the Plaintiff for the acts and omissions of their employees, agents, servants, and representatives under the legal doctrines of respondeat superior, agency, and/or ostensible agency.  As a result thereof, Defendants are vicariously liable for all wrongful and illegal acts, omissions, and conduct of their employees, agents, servants and representatives.

## MISNOMER/ALTER-EGO

8. In the event any parties are misnamed as a "misnomer" and/or such parties are/were "alter egos" of parties named herein.  Alternatively, Plaintiff contends that such "corporate veils," should be pierced to hold such parties properly included or are no included herein, it is Plaintiff's contention that such was a "misidentification" in the interest of justice.

9. The Fifth Circuit has found that the "alter ego doctrine permits the imposition of liability upon the parent company for torts and contractual obligations of its subsidiary…" *Miles v. Am. Telephone & Telegraph Co.,* 703 F.2d 193, 195 (5th Cir. 1983). The theory "provides a vehicle for bringing a subsidiary within the reach of the Texas long-arm statute because a close relationship between a parent and its subsidiary may justify a finding that the parent does business in a jurisdiction through the local activities of its subsidiaries, or vice versa." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Circ. 1983); *Walker v. Newgent* 583 F.2d 163, 167 (5th Cir. 1978).

10. "Where a parent establishes a subsidiary… and dominates it…that the subsidiary is a mere conduit for the parent's business, the parent should not be able to shift the risk of loss." *United States v. Jon-T Chemicals, Inc.* 768 F.2d 686, 693 (5th Cir. 1985); *Nelson v. Int'l. Paint Co.* 734 F.2d 1084, 1093 (5th Cir. 1984); *Edwards Co. v. Monogram Indus.* 730 F.2d 977, 982 (5th Cir. 1984); *Miles v. Am. Tel. & Tel. Co.* 703 F.2d 193, 195 (5th Cir. 1983).

**Nature of the Action**

11. Between April 21, 2018 and April 24, 2018, the Singapore-flagged cargo ship Furness Portland (the "Vessel"), which is owned and operated by Grace, was moored in Bremen, Germany to receive an onload of cargo. During said period, Schultze provided stevedoring operations loading various sizes of metal piping onto the Vessel.

12. Schultze's stevedoring operations during said period were assisted by the Vessel's crew members, specifically by the use of the vessel's deck crane. The Vessel's crew members maintained exclusive control of the Vessel's deck crane while loading stack after stack of various-sized piping. As piping was loaded into the Vessel' cargo hold, neither Schultze

personnel nor the Vessel's crew members placed dunnage and/ or adequate dunnage between the various-sized piping to prevent shifting or rolling during transit or during offload.

13. The Vessel's crew members, being actually or constructively aware that each stack of piping was not separated by dunnage and/or adequate dunnage, failed to take any remedial action and/or failed to raise the hazard with Schulze personnel so that the hazard could be rectified. After being loaded, the Vessel traveled to the Port of Houston in Houston, Harris County, Texas.

14. On or about May 15, 2018, Plaintiff was employed as a Longshoreman by Cooper/Ports America, LLC (the "Employer") at the Port of Houston. Plaintiff was assigned by his Employer to remove the piping cargo from the Vessel. Again, the Vessel's crew members assisted Plaintiff in the offloading of cargo by exercising exclusive control and use of the Vessel's deck crane. Without receiving any warnings from the Vessel's crew members about the stability of the stacks of piping within the cargo hold due to a lack of dunnage, Plaintiff began offloading piping.

15. While Plaintiff was hitching pipes within the Vessel's cargo hold, pipes began to roll and shift. Plaintiff then became pinned between lengths of piping, requiring emergency assistance to be rescued. As a result of being pinned between hundreds of pounds of piping, Plaintiff sustained severe and debilitating injuries.

## Causes of Action
### COUNT 1 – NEGLIGENCE OF GRACE

16. Defendant Grace, as the owner and operator of the Vessel, owed a duty to Plaintiff to exercise ordinary care under the circumstances to have its Vessel and its equipment in such condition that Plaintiff would be able by the exercise of reasonable care to carry on the Vessel's cargo operations with reasonable safety.

17. Further, Defendant Grace, as the owner and operator of the Vessel, owed a duty to Plaintiff to warn of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by Plaintiff in the course of his cargo operations and that are not known by Plaintiff, and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.

18. Defendant Grace breached said duties and is negligent for the following reasons;
    a. Failing to exercise ordinary care during the loading of various-sized piping onto the Vessel as it assisted in Schulze's cargo onloading operations and Plaintiff's cargo offloading operations through the use of the Vessel's deck crane;
    b. Failing to exercise ordinary care by failing to ensure that dunnage and/or adequate dunnage was placed between each stack of piping;
    c. Failing to provide adequate training to the Vessel's crew members;
    d. Failing to conduct operations with an adequate crew;
    e. Violating its own safety rules, policies, and regulations;
    f. Failing to maintain safe mechanisms for work during cargo onload and offload;
    g. Failing to warn Plaintiff of the hidden hazards presented by various-sized stacked piping not separated by dunnage and/or adequate dunnage within the Vessel's cargo hold;
    h. Failing to keep a proper lookout during cargo onload and offload;
    i. Operating the Vessel in an unsafe and improper manner; and
    j. Other acts deemed negligent.

19. Plaintiff's injuries were a direct, proximate, and reasonably probable result of Defendant Grace's negligent acts.

## COUNT 2 – NEGLIGENCE OF SCHULZE

20. Defendant Schulze owed a duty to Plaintiff to act as a reasonable, ordinary, prudent stevedoring operation. Defendant breached said duty and is negligent for the following reasons:

    a. Failing to exercise ordinary care during the onloading of various-sized piping onto the Vessel;

    b. Failing to exercise ordinary care by failing to ensure dunnage and/or adequate dunnage was placed between each stack of piping during the onloading of piping onto the Vessel;

    c. Failing to provide adequate training to its stevedores and lashers;

    d. Failing to adequately supervise the cargo onloading operations;

    e. Failing to adequately inspect the stacked piping once loaded into the Vessel's cargo hold;

    f. Violating its own safety rules, policies, and regulations;

    g. Failing to maintain safe mechanisms for work during stevedoring and lashing operations;

    h. Failing to warn Plaintiff of dangers hidden aboard the vessel cargo hold created by a lack of dunnage and/or adequate dunnage between stacks of piping; and

    i. Other acts deemed negligent.

21. Plaintiff's injuries were a direct, proximate, and reasonably probable result of Defendant Schulze's negligent acts.

## DAMAGES

22. Plaintiff sustained severe injuries to his body and mind.  His earning capacity has been severely diminished if not eliminated altogether.  Further, he has incurred substantial medical and pharmaceutical costs.

23. Plaintiff sustained severe injuries to his body and mind, which resulted in physical pain, mental anguish, and other medical problems.  Plaintiff has sustained severe pain, physical impairment, disability, cognitive injury, discomfort, mental anguish, and distress.  In all reasonable probability, Plaintiff's physical pain, physical impairment, disability, disfigurement, cognitive injury, and mental anguish will continue indefinitely.  Plaintiff has also suffered a loss of earnings in the past, as well as a loss of future earning capacity.  Plaintiff has incurred and will continue to incur pharmaceutical and medical expenses in connection with his injuries.

24. Plaintiff has been damaged in a sum far in excess of the minimum jurisdictional limits of this Honorable Court, for which he now sues.

## JURY DEMAND

25. Plaintiff respectfully requests a trial by jury.

## PRAYER

26. Plaintiff prays that this citation issue and be served upon Defendants in a form and manner prescribed by law, requiring that Defendants appear and answer, and that upon final hearing, Plaintiff has judgment against Defendants in a total sum in excess of $1,000,000.00 and the minimum jurisdiction limits of this Court, plus pre-judgment and post-judgment interests, all costs of Court, and all such other and further relief, to which Plaintiff shows themselves justly entitled including but not limited to:

    a.  Past and future medical damages;

b.  Past and future loss of earning capacity;

c.  Past and future pain and suffering and mental anguish;

d.  Past and future impairment;

e.  Past and future disfigurement;

f.  Past and future disability;

g.  Loss of household services;

h.  Pre-judgment interest;

i.  Post-judgment interest;

j.  Costs of Court;

k.  Attorney's fees; and

l.  All other relief to which Plaintiff is justly entitled, either at law or in equity.

Respectfully submitted,

**PARANJPE MAHADASS RUEMKE LLP**

*/s/ Tej R. Paranjpe*
Tej R. Paranjpe
State Bar No.  24071829
Southern District I.D. No. 1682215
Andrew M. Bivona
State Bar No.  24092138
Southern District I.D. No. 2979941
3701 Kirby Drive, Suite 530
Houston, Texas 77098
(832) 667-7700 Telephone
(832) 202-2018 Facsimile
Email: TParanjpe@pandmllp.com
Email: DBivona@pandmllp.com

**ATTORNEYS FOR PLAINTIFFS**